# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LORIE J. LANE,**

     **Plaintiff,**

     v.                                 **Civil Action 2:18-cv-297**
                                           **Judge James L. Graham**
                                           **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

     **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Lorie J. Lane ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply Memorandum (ECF No. 17), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.    PROCEDURAL HISTORY

On April 6, 2007, Plaintiff was awarded Period of Disability and Disability Insurance Benefits beginning April 26, 2004. (R. 339.) On May 14, 2012, it was determined that Plaintiff was no longer disabled as of May 1, 2012. This determination was upheld upon reconsideration after a disability hearing by a State Agency Disability Hearing Officer. Thereafter, Plaintiff filed timely written request for a hearing before an Administrative Law Judge. Plaintiff appeared and

testified at a hearing held on August 6, 2013 before Administrative Law Judge Timothy G. Keller (the "ALJ").  (R. 386–411.)  Plaintiff received an unfavorable decision by the ALJ on September 11, 2013.  (R. 19–27.)  Plaintiff pursued appeals of that decision through the Appeals Council and eventually this Court.  (*See* Civil Action No. 2:15-cv-87.)  Before the Court undertook any substantive analysis of Plaintiff's appeal, the Court granted the parties' joint motion to remand the case for further administrative proceedings.  (*See* Civil Action No. 2:15-cv-87, ECF No. 17; R. 435–38.)  The Appeals Council vacated the final decision of the Commissioner of Social Security and remanded the case to an Administrative Law Judge for further resolution of issues.  (R. 439–43.)

Plaintiff, represented by counsel, appeared and testified at a second hearing before ALJ Keller on December 17, 2015.  (R. 365–385.)  Vocational expert Carl Hartung (the "VE") also appeared and testified at the hearing.  On January 19, 2016, the ALJ issued a decision finding that Plaintiff's disability under §§ 216(i) and 223(f) of the Social Security Act ended as of May 1, 2012.  (R. 339–359.)  On January 30, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. 239–34.)  Plaintiff then timely commenced the instant action.

## II. THE ALJ'S DECISION

On January 19, 2016, the ALJ issued a decision finding that Plaintiff was no longer disabled within the meaning of the Social Security Act as of May 1, 2012.  (R. 339–59.)  The ALJ noted that the most recent decision finding Plaintiff disabled was dated April 6, 2007 (the "comparison point decision" or "CPD").  (R. 341.)  At the time of the CPD, Plaintiff had medically determinable impairments of vertigo and migraine headaches, which were found to medically equal Listing 11.03 of 20 C.F.R. Part 404, Subpart P, Appendix 1.  At step one of the

sequential evaluation process,[1] the ALJ determined that Plaintiff had not engaged in substantial gainful activity through May 1, 2012. (*Id.* at 342.) Although Plaintiff had, as of May 1, 2012, the medically determinable impairments of vertigo, migraine headaches, degenerative disc disease of the spine, an anxiety disorder, and a depressive disorder, the ALJ determined at step two that her impairments did not meet or equal the severity of Listing 11.03 or any other impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) At step three, the ALJ found that medical improvement had occurred as of May 1, 2012, and that the medical improvement was related to Plaintiff's ability to work because she no longer met or equaled the

---

[1] Social Security Regulations require ALJs to determine whether a claimant continues to be disabled through an eight-step evaluation of the evidence. *See* 20 C.F.R. § 404.1594(f). If fully considered, the sequential evaluation considers and answers eight questions:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant's disability will be found to have ended.
2. If not, does the claimant have an impairment alone or in combination, meet or equal the severity of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1? If so, the claimant's disability will be found to continue.
3. If not, has there been medical improvement as shown by a decrease in medical severity? If not, the evaluation proceeds to step 5.
4. If there has been medical improvement, is it related to the ability of the claimant to do work? If not, the evaluation proceeds to step 5; if so, the evaluation proceeds to step 6.
5. This step contains the exceptions to continuing disability even when no medical improvement is found in step 3 or the improvement is not related to ability to do work in step 4. If no exceptions apply, the claimant's disability will be found to continue. If one of the first group of exceptions to medical improvement applies, the evaluation proceeds to step 6. If an exception from the second group applies, the claimant's disability will be found to have ended.
6. If medical improvement is shown, is the claimant's current impairment nonetheless severe? If not, the claimant's disability will be found to have ended.
7. If the claimant's current impairment is severe, does the claimant nonetheless have the residual functional capacity to perform the claimant's past work? If so, the claimant's disability will be found to have ended.
8. If the claimant is not able to perform his or her past work, can the claimant perform other work? If so, the claimant's disability will be found to have ended. If not, the claimant's disability will be found to continue.

*Johnson v. Sec'y of Health & Human Servs.*, 948 F.2d 989, 991 (6th Cir. 1991).

3

same listing that was satisfied at the time of the CPD. (*Id.* at 345.) Although Plaintiff continued to have a severe impairment as of May 1, 2012, the ALJ determined that she nonetheless had the following residual functional capacity ("RFC"):[2]

> Based on the impairments present as of May 1, 2012, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant could lift, carry, push, and pull up to 50 pounds occasionally and 25 pounds frequently. She could sit, stand, and walk up to 6 hours each out of an 8-hour workday. The claimant would be precluded from climbing ladders, ropes, and scaffolds. She should avoid moving machinery and unprotected heights. The claimant would be precluded from commercial driving. She could understand, remember, and carry out simple, repetitive tasks and maintain concentration and attention for 2-hour segments over an 8-hour work period. The claimant could respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is casual and infrequent. Further, the claimant could adapt to simple changes and avoid hazards in a setting without strict production requirements.

(R. 346.) Using this RFC, the ALJ determined that Plaintiff was capable of performing past relevant work as a housekeeper as of May 1, 2012, and could also perform other jobs existing in the national economy. (R. 357–58.) Accordingly, the ALJ concluded that Plaintiff's disability ended as of May 1, 2012. (R. 359.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

Plaintiff raises three issues in her Statement of Errors (ECF No. 12):

    **A.** The ALJ failed to properly apply the "medical improvement" standard;

    **B.** The ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Forrestal; and

    **C.** The ALJ failed to account for Plaintiff's continued problems with concentration, persistence, and pace when determining her RFC.

The undersigned will consider each assertion of error in turn.

### A. Any error by the ALJ in applying the "medical improvement" standard was harmless.

In 20 C.F.R. § 404.1594, the Regulations outline the process for considering medical improvement and whether a claimant's disability period has ended. The United States Court of Appeals for the Sixth Circuit has described medical improvement as follows:

> The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* And a medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities . . . ." 20 C.F.R. § 404.1594(b)(3). *See also Nierzwick v. Commissioner of Social Security,* 7 Fed. Appx. 358 (6th Cir. 2001).

*Kennedy v. Astrue*, 247 F. App'x 761, 764–65 (6th Cir. 2007). In other words, medical improvement "is determined by a comparison of prior and current medical evidence . . . ." 20 C.F.R. § 404.1594(c)(1). The regulations further provide that, "[i]f medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work." 20 C.F.R. § 404.1594(c)(3)(i).

The ALJ's discussion of Plaintiff's medical improvement was as follows:

> The medical evidence supports a finding that, as of May 1, 2012, there had been a decrease in medical severity of the impairments present at the time of the CPD. The record shows the claimant reported vertigo, but chemical and medical treatment improved her symptoms (Exhibit B2F). She reported some intermittent dizziness, but MRI testing was unremarkable (Exhibit B16F/17F). Further, despite some intermittent dizziness, the claimant showed no focal deficits and she maintained a normal gait (Exhibits B17F: B18F). Additionally, her symptoms were relieved by medications including Antivert (Exhibit B20F). The record supports the claimant's migraine headaches were reduced to intermittent and she was satisfied with her migraine treatment (Exhibits B8F; B16F; B18F). She reported she was okay on her medication and showed no gait instability (Exhibit B8F/6). When she does report a headache, she indicates she continues to obtain relief with medication (Exhibit

> B16F). The claimant experienced some degenerative disc disease, but the record supports she stopped attending physical therapy after her interbody fusion surgery in February 2015 and continues to engage in normal activities of daily living, ambulating without a need for an assistive device, showing no reduced strength or irregular gait (Exhibit B21F). Additionally, her most recent mental health treatment notes support both her anxiety and depression are controlled with treatment, specifically medication management. Therefore, the record shows medical improvement since May 1, 2012.

(R. 345.)

Plaintiff argues that the ALJ did not undertake the necessary comparison between her impairments at the time of the CPD (April 6, 2007) and her impairments as of the date her disability allegedly ended (May 1, 2012). (Reply 3–4, ECF No. 17.) Rather, the ALJ evaluated her symptoms as of May 1, 2012, concluded that she no longer met Listing 11.03, and "summarily concluded" that "the record shows medical improvement." (Statement of Errors 7, ECF No. 12.)

Plaintiff is correct that the ALJ did not undertake a comparison of her symptoms as of May 1, 2012 and the CPD as required by the regulations. In fact, the undersigned can find no description of the severity of Plaintiff's impairments at the time of the CPD anywhere in the record. The failure to discuss the severity of Plaintiff's impairments at the time of the CPD, and compare that to the severity of Plaintiff's impairments as of May 1, 2012, was error. *Kennedy*, 247 F. App'x at 765, 768 (reversing ALJ's decision where no efforts were made to compare the severity of prior and current impairments).

Plaintiff, however, unlike the plaintiff in *Kennedy*, was found to have impairments equaling an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 at the time of her CPD. (R. 342.) Specifically, at the time of the CPD, Plaintiff's impairments were found to equal Listing 11.03 (non-convulsive epilepsy) due to her vertigo and migraine headaches. (*Id.*) Although he did not specifically compare her impairments between the two time periods, the

7

ALJ did conclude that Plaintiff's impairments as of May 1, 2012, did not meet or equal the severity of Listing 11.03 (or Listings 1.04 (disorders of the spine), 12.04 (affective disorders), or 12.06 (anxiety-related disorders)).

Importantly, Plaintiff does not directly challenge the ALJ's finding that her impairments did not meet or equal the criteria of Listing 11.03 as of May 1, 2012. Even if she had, the Court finds that Plaintiff has not identified evidence in the record that would support a finding that she met or equaled Listing 11.03. This listing in effect at the time of the ALJ's decision reads:

> Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 11.03. No one has suggested that Plaintiff ever "met" the criteria for Listing 11.03—for one thing, there is nothing in record indicating a diagnosis of epilepsy—but in 2007, her vertigo and migraine headaches were found to "medically equal" those criteria. Although there is no listing that specifically addresses migraine headaches, the Social Security Administration's Program Operations Manual System ("POMS") indicates that Listing 11.03 is the "most closely analogous listed impairment" for migraine headaches. POMS DI 24505.015(B)(7)(b) (2013). The POMS also provides an example of a severe migraine condition that could medically equal Listing 11.03:

> [A] claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs [activities of daily living]. The claimant takes her medication as her doctor prescribes. The findings of the claimant's impairments are very similar to those of 11.03, Epilepsy, non-convulsive. Therefore, 11.03 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely

analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.03.

POMS DI 24505.015(B)(7)(b) (2013). Although the POMS does not have the force of law and is "not [the] product[ ] of formal rulemaking, [it] nevertheless warrant[s] respect" in interpreting the Listings. *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385-86 (2003).

Under this standard, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal Listing 11.03 as of May 1, 2012. He noted "there was no consistent objective documentation or treatment showing her dizziness occurred on a frequent basis or was significant in duration. Further, the record shows, the claimant was again driving, ambulating without any significant difficulty, and chemical and medical treatments had improved her symptoms." (R. 343.) He further noted that Plaintiff "was supplied medication that was helping her migraine headache condition." (*Id.*) Plaintiff's treating physician, Dr. Forrestal, stated in his medical questionnaire dated June 17, 2013, that Plaintiff experienced headaches only "every two weeks." (R. 283.) And although Dr. Forrestal also stated in the same medical questionnaire that Plaintiff lost consciousness "once a week," his treatment notes indicate only a handful of episodes involving lost consciousness over a several years. (R. 306, 519–23.) The undersigned therefore finds no error with the ALJ's conclusion that Plaintiff's impairments neither met nor medically equaled Listing 11.03.

Given that Plaintiff's vertigo and migraine headaches were severe enough to equal Listing 11.03 at the time of the CPD, and given that her vertigo and migraine headaches, although still present, were not severe enough to equal Listing 11.03 as of May 1, 2012, it logically follows that Plaintiff's vertigo and migraine headaches must have medically improved. *See Murphy v. Berryhill*, 727 F. App'x 202, 207 (7th Cir. 2018) (finding medical improvement

9

based on physician's assessment that plaintiff no longer met the criteria of a previous listing); *Jones v. Colvin*, No. CIV.A. H-13-1221, 2014 WL 3827819, at *10 (S.D. Tex. July 31, 2014) (same). As a result, even though the ALJ erred by not making the required comparison between Plaintiff's symptoms at the two relevant points in time, this error was harmless, and reversal is not warranted. *Rabbers*, 582 F.3d at 654–55.

**B.     The ALJ did not err in his evaluation of Plaintiff's treating physician.**

Plaintiff's second contention of error is that the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Forrestal. The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s),"

opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ explained he afford Dr. Forrestal's opinions "little weight" and "some weight" because his recommended limitations are not supported by his treatment notes or other evidence of record:

> The undersigned gives little weight to the assessment evidenced at Exhibit B12F completed by Dr. Forrestal, M.D., the claimant's treating physician. Dr. Forrestal opined the claimant had dizzy spells all of the time, blackouts and loss of consciousness once per week, headaches every two weeks, and indicated that her complaints are consistent with the objective findings and other medical evidence in the record. First, the form is a checkbox form and Dr. Forrestal offers no functional explanation as to how the claimant is limited by any of her alleged conditions or symptoms. Second, he asserts the claimant's allegations are supported by and consistent with the objective evidence in the record; however, he does not cite to or provide examples from the record showing objective testing or documentation supporting his statements showing dizziness all of the time, blackouts once per week, and headaches every two weeks. In fact, the record supports the claimant experience one isolated episode of syncope (Exhibit B 16F). This episode was related to her anxiety and not to vertigo or headaches (Exhibit B18F/2). The record does not show continuous episodes of blackouts or emergency treatment for blackouts. Further, the claimant was driving, an activity she would not be doing if she were having routine blackout spells. Dizziness was not something reported consistently in the record. During 2013, MRI brain testing was unremarkable (Exhibit B16F/17). The claimant's coordination remained intact and she ambulated with a normal gait with no ataxia even when she was dizzy (Exhibit B16F). She showed no weakness and there were no exacerbations of her dizziness with bending or head movement (Exhibit B16F). The record supported only intermittent headaches in 2013 (Exhibits B15F; B16F). The record supports medication relieved her symptoms (Exhibit B16F). Therefore, while her treating doctor noted the record via objective documentation supported her complaints, the record shows during the time the assessment was made in June 2013, the record does not support his assessment. As such, the undersigned finds the claimant was responding to treatment and that she was not as limited as Dr. Forrestal indicated.
>
> The undersigned provides some weight to the functional assessment provided by Dr. Forrestal, M.D., evidenced at Exhibit B13F. Dr. Forrestal opined the claimant was limited to standing and walking 30 minutes at a time for 4 hours each and sitting for 20 minutes at a time for 4 hours. He indicated the claimant could lift up to 10 pounds rarely, would be precluded from grasping, pulling, or engaging in fine manipulation, could not use her feet for movements, could occasionally bend, squat, crawl, and climb stairs, and would be precluded from climbing ladders, ropes, and scaffolds. He further noted the claimant had constant dizziness with activity and at

rest, low back and right buttock pain, and occasional blackouts that increased with stress. The undersigned affords some weight to the postural limitations indicating the claimant would be precluded from climbing ladders, ropes, and scaffolds as such a limitation is consistent with the evidence of record, which shows the claimant has intermittent problems with vertigo and headaches. The undersigned gives less weight to the remaining limitations, as the record does not support such restrictive exertional limitations, postural limitations, or manipulative limitations. Treatment records documented the claimant continued to show normal strength and functioning in both her upper and lower extremities, with no focal deficits, showing the claimant could toe walk, heel walk, and engage in deep knee bending without difficulty (Exhibit B21F/65). The claimant ambulated with a steady normal gait and did not require the use of any assistive device (Exhibit B8F; B5F; B18F: B21F). She showed no impairment of fine or gross manipulation (Exhibit B7F). As such the record shows no reason to limit the claimant's use of her hands for engaging in fine and gross manipulative activities. Further, the notations regarding dizziness, back pain, and blackouts appear to be based on the claimant's subjecting reporting, which for reasons noted above appear to be unreliable. Therefore, overall, the undersigned provides Dr. Forrestal no more than some weight.

(R. 356–57.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Forrestal's opinion. The ALJ articulated the weight he afforded the opinion and properly declined to afford it controlling weight on the grounds it was unsupported by objective evidence. The first assessment, comprised of Dr. Forrestal's answers to interrogatories dated June 17, 2013, was a checkbox form with no explanations or supporting citations to the record. (R. 283–84.) As the Sixth Circuit has held, an ALJ may properly assign little weight to opinions from treating sources "where the physician provided no explanation for the restrictions . . . and cited no supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016). Moreover, Dr. Forrestal's assertions that Plaintiff suffers from dizziness "all the time" and loses consciousness "once a week" are not supported by Dr. Forrestal's own treatment notes. Rather, his treatment notes indicate only a handful of episodes involving lost consciousness over several years (R. 306, 519–23), and his assessment of constant dizziness appears to be based on Plaintiff's subjective complaints. *Cf. Poe v. Comm'r of Soc. Sec.*, 342 F.

13

App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, [the claimant's] treating physician, was not entitled to deference because it was based on [the claimant's] subjective complaints, rather than objective medical data.").

Dr. Forrestal's physical capacity evaluation, also dated June 17, 2013, was also properly discounted by the ALJ. Here, Dr. Forrestal opined that Plaintiff could stand for four hours total and 30 minutes at one time; could walk for four hours total and 30 minutes at one time; could sit for four hours total and 30 minutes at one time; could rarely lift up to 10 pounds; could not use her hands for simple grasping, pushing, pulling, or fine manipulation; could not use her feet for repetitive movements; could occasionally bend, squat, crawl, and climb steps; and could not climb ladders. (R. 286–87.) The ALJ agreed with Dr. Forrestal's postural limitations due to her ongoing complaints of dizziness and precluded Plaintiff from climbing ladders, ropes, and scaffolds in the RFC. (R. 346, 356.) However, the ALJ afforded less weight to Dr. Forrestal's other recommended limitations as to walking, standing, sitting, lifting, and hand or foot movements as being unsupported by the record. (R. 356.) As the ALJ noted, treatment records reflect that Plaintiff demonstrated normal strength and functioning in her upper and lower extremities; showed no focal deficits; exhibited a normal gait without the need for an assistive device; was able to toe walk, heel walk, and engage in deep knee bending without difficulty; and showed no impairment of fine or gross manipulation. (R. 357.) The undersigned therefore concludes that substantial evidence supports the ALJ's decision to discount Dr. Forrestal's opinions.

## C. The ALJ did not err in determining Plaintiff's RFC.

Plaintiff next argues that the RFC, as determined by the ALJ, fails to account for issues with concentration, persistence, pace, and potential time off task. (Statement of Errors 16, ECF No. 12.) For the reasons that follow, the undersigned finds this error lacks merit.

The ALJ is charged with the final responsibility for determining a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's residual functional capacity based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI); 20 C.F.R. § 404.1545(a) ("the ALJ . . . is responsible for assessing your residual functional capacity"). As the court recognized in *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222 (N.D. Ohio March 2, 2010), the ALJ is charged with evaluating several factors in determining the residual functional capacity, including the medical evidence (not limited to medical opinion testimony) and the claimant's testimony. *Id.* at *2 (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); Social Security Ruling 96-5p; Social Security Ruling 96-8p).

An ALJ's residual functional capacity assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence regarding what work a claimant is capable of performing. Social Security Ruling 96-5p. Social Security Ruling 96-8p instructs that the ALJ's residual functional capacity assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. Social Security Ruling 96-8p.

The applicable regulation, 20 C.F.R. § 404.1527(d)(2), also explains that "[a]lthough we consider opinions from medical sources on issues such as . . . your residual functional capacity, . . . the final responsibility for deciding these issues is reserved to the Commissioner." The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2), (3), (4). Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994).

The ALJ included several non-exertional limitations related to Plaintiff's ability to maintain concentration in the RFC. Specifically, he stated that Plaintiff

> could understand, remember, and carry out simple, repetitive tasks and maintain concentration and attention for 2-hour segments over an 8-hour work period . . . in a task-oriented setting . . . [and] could adapt to simple changes . . . in a setting without strict production requirements.

(R. 346.) According to Plaintiff, these limitations do not sufficiently account for her difficulties with concentration, persistence, pace, and potential time off task. (Statement of Errors 16, ECF No. 12.) Plaintiff's argument relies heavily on the opinion of Bill Anderson, MSW, LISW, Plaintiff's treating therapist. (R. 289–91.) Mr. Anderson opined that Plaintiff had numerous "marked" and "severe" limitations as to her ability to maintain concentration, adapt to changes in the work setting, and tolerate customary work pressures. (*Id.*) However, as the ALJ and the Commissioner point out, Mr. Anderson is not an acceptable medical source and the ALJ did not err by not adopting his recommendations. 20 C.F.R. § 404.1513; *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 n.9 (6th Cir. 2016) (licensed social worker is not an acceptable medical source

16

whose opinion is owed deferential weight in determining a claimant's RFC). Moreover, the ALJ noted that Mr. Anderson's opinion that Plaintiff was likely to have 5 or more unscheduled absences a month was inconsistent with her recent work experience, where she worked part-time without missing days, and eventually stopped working due to her back pain and not any difficulties with concentration. (R. 291, 355, 369.)

Additionally, Mr. Anderson's more extreme recommended limitations are inconsistent with other evidence in the record from medically acceptable sources. In May 2012 and November 2012, Plaintiff's medical evidence was reviewed by psychologists Bonnie Katz, Ph.D., and Carl Tischler, Ph.D., respectively. Drs. Katz and Tischler determined that Plaintiff was "moderately" limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting. (R. 227–28, 270–71.)

In December 2012, Psychologist Kent Rowland, Ph.D., a state agency examiner, observed that Plaintiff demonstrated average reasoning with only mild difficulties in concentration and short-term memory. (R. 224.) Dr. Rowland opined that Plaintiff "may have some difficulty periodically performing multi-step tasks with normal persistence due to her depression." (R. 225.) Finally, Plaintiff began seeing Avneet Hira, M.D., for medication management in 2013. Dr. Hira noted in 2013 and 2015 that Plaintiff's concentration, attention, and recent and remote memory were intact. (R. 293, 539.)

Plaintiff does not explain what specific limitations are required that are not already incorporated in the RFC; nor does she respond on reply to the Commissioner's argument that Mr.

17

Anderson's more extreme recommended limitations are not entitled to deference. The undersigned therefore concludes that substantial evidence supports the RFC set forth in the ALJ's decision (limiting Plaintiff to simple, repetitive tasks; adapting to only simple changes; and to a setting without strict production requirements).

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE